**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LAQUAM MALIK SMITH | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  21-2636 |
| | : | |
| BOBBI JO SALAMON ET AL. | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                                          August 6, 2024

      The state court jury found Laquam Malik Smith guilty of murdering Julio Hernandez.  A
neighbor who witnessed the shooting identified Mr. Smith's photo from an array four days later.
The Commonwealth adduced fingerprint evidence but mistakenly identified the print on a car
other than getaway car. The state court judge held a hearing on Mr. Smith's challenge to the
suggestiveness of a photo array. The judge detailed her fact findings on the photos, later admitted
evidence of the neighbor's identification, and found a prosecutor's statement in closing arguments
did not prejudice Mr. Smith. The Pennsylvania appellate courts upheld the conviction and denial
of post-conviction relief. Mr. Smith moves for habeas on the same thoughtful but fact-based
grounds reviewed by Pennsylvania judges. But we did not – and cannot today – make fact
findings. He is not offering legal grounds requiring habeas relief on his remaining claims. Judge
Hey recommended we deny his habeas petition in a detailed analysis. Mr. Smith's counsel objects
to Judge Hey's analysis with the same arguments made to the state courts and Judge Hey. We
understand his disagreement with the fact findings and independently studied the legal
conclusions. We overrule Mr. Smith's objections to Judge Hey's recommendation and deny his
habeas petition. We find no grounds for an evidentiary hearing or a certificate of appealability.

I.      **Facts adduced at the state court trial.**

Julio Cesar Hernandez parked his red Mitsubishi Montero in a driveway he shared with neighbor Jorge Gonzalez behind his Philadelphia home on February 21, 2012.[1] Two surveillance cameras captured a view of the shared driveway. The surveillance video showed someone parked a white Chrysler 300 behind Mr. Hernandez's red car in the shared driveway.[2] The surveillance video shows a Buick is also parked in the shared driveway.[3]

Ladale Pace, dressed in a dark hoodie and dark jeans, entered the white car for thirty seconds before he exited.[4] Mr. Pace used Mr. Hernandez's keys to enter Mr. Hernandez's home and search his bedroom. Mr. Hernandez's wife noticed a male standing outside of the door.[5] She saw Mr. Pace standing on the stairs holding a gun.[6] Mr. Pace and the man standing outside of her door ran away in different directions.

Neighbor Jorge Gonzalez walked toward his van in the driveway he shared with Mr. Hernandez.[7] He heard gunshots. Mr. Gonzalez saw a man approach Mr. Hernandez wearing a gray hoodie with the hood partially covering his hair.[8] Mr. Gonzalez saw the man shoot Mr. Hernandez in the back of the head.[9] The same man entered the passenger side of the white car behind Mr. Hernandez's car and drove away.[10] Mr. Hernandez died from multiple gunshot wounds.

### *Police investigate and arrest Mr. Smith*

Neighbor Gonzalez provided a statement to police on the day of the shooting in which he described the shooter as dark-skinned, skinny, and about 5'5" or 5'6" tall.[11]

Philadelphia Detective Gregory Singleton determined fingerprints on a black cellphone found at the scene matched Laquam Malik Smith's fingerprints.[12] Detective Singleton obtained a photograph of Mr. Smith. He prepared a photo array using a computer to generate the other

seven images of males with similar features as Mr. Smith.[13] Mr. Smith's photograph depicted him with longer hair than the other males in the array.[14] Neighbor Gonzalez identified Mr. Smith out of the photo array by circling and signing below Mr. Smith's photograph on February 25, 2012.[15]

Authorities arrested Mr. Pace on March 15, 2012 in a white car matching the getaway car at the scene of the shooting death of Mr. Hernandez.[16] Authorities arrested Mr. Smith on April 11, 2012 for the shooting death of Mr. Hernandez.[17] Mr. Smith told a cellmate while in custody he tried "rob a papi Dominican" and "shot the papi."[18] He also told the cellmate the evidence against him included his cell phone left at the scene.

### April 2013 Preliminary Hearing

Mr. Smith proceeded to defend the charges along with his co-defendant Ladale Pace. Judge Deleon presided over Mr. Smith's preliminary hearing on April 24, 2013.[19] Neighbor Gonzalez identified Mr. Pace as shooting Mr. Hernandez in the head before clarifying "I don't know, because…his hair was bigger that day than what I am seeing today."[20] Neighbor Gonzalez later acknowledged on cross-examination he mistakenly identified Mr. Pace in court as the shooter.[21]

Neighbor Gonzalez explained he told detectives on an unknown date the shooter had hair akin to Afro and was wearing a hoodie which was "filled in" by his hair.[22]

### July 2014 pre-trial suppression hearing on the photo array

Trial Judge Ransom of the Philadelphia Court of Common Pleas presided over a suppression hearing on July 8, 2014 before trial.[23] Mr. Smith moved to suppress Neighbor Gonzalez's out-of-court photo array identification arguing the array was impermissibly suggestive and violated due process. Judge Ransom applied the factors in the Supreme Court's

decision in *Neil v. Biggers* and found they weighed in favor of admitting the photo array evidence because: (1) Neighbor Gonzalez was in the shared driveway behind the Hernandez home at the time he saw Mr. Smith shoot Mr. Hernandez, (2) Neighbor Gonzalez moved closer to the source of the sound after he heard gunshots, (3) Neighbor Gonzalez gave a statement to police on the day of the incident describing the shooter as dark-skinned, skinny, wearing jeans and a grey hoodie, and in his early twenties, which was consistent with the individual captured on the security cameras, (4) the limited four days of time between Neighbor Gonzalez's identification and the time of the crime, and (5) Neighbor Gonzalez never wavered in his identification; he circled Mr. Smith's picture without hesitation.[24]

Judge Ransom denied Mr. Smith's motion to suppress, reasoning "issues raised by the defendant Smith go to the weight of the evidence and do not rise to the level as being unnecessarily suggestive or unduly prejudicial."[25] Judge Ransom found, "[A]ny effect that [Mr. Smith's] longer hair had on the identification was minimal."[26]

### *The fingerprint evidence from cars in the driveway*

The jury heard evidence about three cars—Mr. Hernandez's red car, Mr. Pace's white car, and a Buick depicted in surveillance footage. Philadelphia Officer Yatcilla collected the fingerprint evidence.[27] A fingerprint expert employed by the Philadelphia Police Department, Patrick Raytik, swore he analyzed the prints and found two latent prints matched Mr. Smith's.[28] He testified one of the latent prints found on the passenger side vanity mirror of the Buick matched the prints of Mr. Smith.[29]

The day after Expert Raytik's testimony, Assistant District Attorney Thomas Lipscomb informed Judge Ransom about "some confusion with [Expert] Raytik" as to where he found Mr. Smith's latent print.[30] Assistant District Attorney Lipscomb explained he originally believed the

police found Mr. Smith's fingerprint on Mr. Hernandez's red car but he recently learned police found the latent print on Mr. Pace's white getaway vehicle.[31] Assistant District Attorney Lipscomb requested to recall Officer Yatcilla as a witness to testify he found Mr. Smith's prints on the white car.[32] Mr. Smith's counsel objected arguing he intended to move for a mistrial if Judge Ransom allowed Assistant District Attorney Lipscomb to recall Officer Yatcilla and admit evidence Officer Yatcilla found Mr. Smith's print on the white car.[33] Judge Ransom did not allow Assistant District Attorney Lipscomb to recall Officer Yatcilla. The jury never learned Officer Yatcilla found the print in Mr. Pace's white car.

### Surveillance video evidence

Detective James Dunlap testified he recovered surveillance videos from three properties adjacent to Mr. Hernandez.[34] Detective Dunlap played a compilation of the videos for the jury. Detective Dunlap explained on cross-examination he tried to blow up frames from the video depicting individuals facing the camera but the image quality was not good enough to use the frames to make a positive identification.[35]

### The Commonwealth's closing argument

Assistant District Attorney Lipscomb showed a still frame from the video to the jury during closing arguments, commenting the person depicted in the picture "has a striking resemblance" to Mr. Smith.[36] Mr. Smith's attorney objected on the record once the jury left and moved for a mistrial. Judge Ransom overruled the objection, reasoning potential prejudice caused by the statement was mitigated by her repeated instructions to the jury statements of counsel are not evidence and the fact the jury had the opportunity to view the image and draw its own conclusions.[37]

### *Jury deliberations*

The jury requested to see the video surveillance during its deliberations.[38] Mr. Smith's counsel objected to replaying the video surveillance with the blown-up image for the jury and moved for a mistrial.[39] Judge Ransom allowed the jury to rewatch the video surveillance.[40]  The jury continued its deliberations. The jury asked to see the close-up picture of faces from the video.[41] Mr. Smith's counsel renewed his objection and mistrial motion.[42] Judge Ransom allowed the jury to view the video.[43]

### *Jury conviction and Judge Ransom's sentencing*

The jury convicted Mr. Smith of first–degree murder, burglary, robbery, conspiracy, carrying a firearm without a license, and carrying a firearm in public on July 17, 2014.[44] Judge Ransom sentenced Mr. Smith to life without parole for murder and no further penalty for the remaining charges.[45]

### *Mr. Smith's direct appeal*

Mr. Smith timely appealed his sentence to the Pennsylvania Superior Court.[46] Mr. Smith, then represented by Attorney Michael J. Farrell, raised two issues on appeal: (1) the trial court violated his due process rights by denying his motion to suppress the out-of-court identification as impermissibly suggestive thereby tainting the in-court identification, and (2) the Assistant District Attorney engaged in prosecutorial misconduct in closing argument by opining someone in a still frame from a surveillance camera bore a "striking resemblance" to Mr. Smith.[47]

The Pennsylvania Superior Court held Mr. Smith waived his challenge to the out-of-court identification based on the photo array because he did not include a copy of the array in the certified record.[48] The Superior Court alternatively held the trial court did not err in admitting the

out-of-court identification because the fact Mr. Smith had the longest hair of the individuals in the array was not unduly suggestive.[49]

The Superior Court held Mr. Smith waived his challenge based on the closing arguments because he did not provide a transcript of the argument.[50] The Superior Court alternatively held the challenge lacked merit because Mr. Smith did not show the Assistant District Attorney's comments prejudiced the jurors and Judge Ransom's instruction to the jury closing arguments are not evidence cured any alleged prejudice. Mr. Smith did not seek review in the Pennsylvania Supreme Court.

### *Mr. Smith sought post-conviction collateral relief*

Mr. Smith petitioned for post-conviction relief on January 11, 2017.[51] The Honorable Diane L. Anholt appointed counsel.[52] Counsel filed an amended petition claiming Mr. Smith's trial counsel was ineffective for (1) failing to include the photo array in the appellate record, and (2) failing to seek a mistrial when the Assistant District Attorney revealed midway through trial police found Mr. Smith's fingerprint on the getaway vehicle.[53] As to the fingerprint evidence, Mr. Smith argued (1) he was prejudiced by counsel's failure to move for a mistrial because his counsel had to improvise a defense strategy mid-trial once he learned the location of the latent prints, and (2) he could have struck a plea bargain with the Commonwealth if he knew about the fingerprint evidence before trial.[54]

Judge Anholt dismissed Mr. Smith's petition without a hearing.[55] The Superior Court affirmed the denial of post-conviction relief, concluding the Superior Court's earlier alternative merits holding on the photo array claim was dispositive and the fingerprint evidence claim lacked merit.[56] The Superior Court reasoned Mr. Smith's claim the fingerprint evidence prejudiced defense strategy is meritless because Judge Ransom prohibited the prosecution from

attributing the fingerprints from the white car to Mr. Smith.[57] Counsel's failure to move for a mistrial actually provided Mr. Smith a tactical advantage because the fingerprint evidence could be admitted on retrial.[58] Mr. Smith had the benefit of a trial without the jury ever learning of the fingerprint evidence linking him to the white getaway vehicle. The Superior Court reasoned Mr. Smith's claim about a pre-trial plea bargain is meritless because "the Commonwealth was similarly under a misimpression about the fingerprint evidence, bringing into question whether the Commonwealth would have extended the offer if it were in possession of accurate information about the evidence."[59]

The Pennsylvania Supreme Court denied Mr. Smith's petition for allowance of appeal.[60]

### *Mr. Smith seeks habeas relief*

Mr. Smith, through counsel, petitioned for habeas relief.[61] He claimed: (1) Judge Ransom should have suppressed the out-of-court identification because it was unduly suggestive and the in-court identification is fruit of the poisonous tree; appellate counsel was ineffective for waiving this claim by failing to include a copy of the array in the record, (2) the Assistant District Attorney engaged in prosecutorial misconduct by arguing someone in a still frame from the surveillance camera footage bore "a striking resemblance" to Mr. Smith and post-conviction counsel was ineffective for not bringing an ineffective assistance of counsel claim against his trial counsel on direct appeal, and (3) trial counsel was ineffective for failing to move for mistrial after the Assistant District Attorney revealed five days into trial police found Mr. Smith's fingerprint on the getaway vehicle.

We referred Mr. Smith's petition to Judge Hey for a Report and Recommendation.[62] Judge Hey concluded the Superior Court's decision affirming the suppression of the photo array is not an unreasonable application of clearly established federal law, nor an unreasonable

determination of the facts. Judge Hey reasoned the photo array is not unduly suggestive because "[a]lthough Smith's hair appears slightly longer than the other seven people depicted in the photographs in the photo array, all of the photos portray young African American males with short hair and similar facial hair."[63] Judge Hey found it unnecessary to consider the "totality of the circumstances" under *Neil v. Biggers* because "such inquiry is not necessary unless and until the photo array is found unduly suggestive."[64] Judge Hey reasoned appellate counsel did not prejudice his client by failing to include a copy of the array in the record because the Superior Court alternatively held the claim lacked merit. Judge Hey recommended we deny habeas relief on the first ground.

Judge Hey concluded Mr. Smith's claim for prosecutorial misconduct is procedurally defaulted because Mr. Smith's counsel did not include a copy of the closing argument transcript in the record.[65] Judge Hey excused the default because the District Attorney did not rely on it in responding to the claim and federal courts may deny claims notwithstanding failure to exhaust under 28 U.S.C. § 2254(b)(2).[66] Judge Hey agreed with the Superior Court's holding Mr. Smith suffered no prejudice from the Assistant District Attorney's conduct because: (1) there existed significant identification evidence at trial, including the photo array, fingerprint evidence, and cellmate testimony, (2) the jury could determine on their own whether Mr. Smith resembled the person depicted in the still frame, and (3) Judge Ransom instructed the jurors they are the sole judges of the facts and statements by attorneys are not evidence.[67] Judge Hey recommended we deny habeas relief on the second ground on the merits.

Judge Hey found Mr. Smith was not prejudiced by his counsel's failure to move for a mistrial based on fingerprint evidence. Judge Hey agreed with the Superior Court's reasoning counsel acted competently because if he moved for a mistrial and Judge Ransom granted his

motion, the defense would lose the tactical advantage of trying the case without the jury ever learning police found Mr. Smith's fingerprint on the getaway vehicle.[68] Judge Hey rejected Mr. Smith's argument he was prejudiced by his counsel allegedly having to change theories mid-trial, reasoning Mr. Smith overlooks the fact his counsel succeeded in persuading Judge Ransom to preclude the Assistant District Attorney from recalling Officer Yatcilla.[69] The jury never heard the evidence. Judge Hey agreed with the Superior Court Mr. Smith's claim he could have struck a plea bargain with the Commonwealth knowing the evidence he faced at trial is speculative. Judge Hey recommended we deny habeas relief on the third ground.

Judge Hey issued a detailed Report and Recommendation recommending we deny the habeas petition and decline to issue a certificate of appealability.

### *Mr. Smith objected to Judge Hey's Report and Recommendation*

Mr. Smith, through counsel, objected to Judge Hey's Report and Recommendation.[70] He repeats the same arguments he made to Judge Hey:

1. Judge Ransom should have suppressed Mr. Gonzalez's out-of-court identification of Mr. Smith from a photo array because it is suggestive and the in-court identification as fruit of the poisonous tree;

2. The Assistant District Attorney engaged in prosecutorial misconduct by arguing someone in a still frame bore a striking resemblance to Mr. Smith; and,

3. Trial counsel was ineffective for failing to move for a mistrial after the Assistant District Attorney revealed police found Mr. Smith's fingerprint on the getaway vehicle midway through trial.[71]

II.     **Analysis**

We review de novo the portions of Judge Hey's Report and Recommendation to which Mr. Smith objects and we "may accept, reject, or modify, in whole or in part, the findings or recommendations made" by Judge Hey.[72] We independently studied the record and Judge Hey's detailed findings and recommendations. We adopt and approve Judge Hey's findings and recommendations. We deny Mr. Smith's petition and find no grounds for an evidentiary hearing or a certificate of appealability.

Mr. Smith seeks federal habeas relief. Congress limits the power of federal courts to grant habeas relief to a state prisoner. We may review "only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'"[73] We may not grant habeas relief unless the petitioner exhausted remedies available to him in state court.[74]

Congress limits our award of habeas relief: we "shall not" grant habeas relief  on any claim "adjudicated on the merits in State court … unless the adjudication of the claim— (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[75] "The scope of our review is limited to the 'last reasoned [state court] decision' adjudicating the petitioner's habeas claims."[76]

A state court decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent or involves facts "that are materially indistinguishable" from those in a Supreme Court decision but reaches a different result.[77] "Under AEDPA, we review state court decisions adjudicating post-conviction relief claims for reasonableness—we will not grant a writ

of habeas corpus if the state court's application of federal law was reasonable."[78] A state court decision is an "unreasonable application of" clearly established federal law if there is no possibility "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.[79] "If this standard is difficult to meet, that is because it was meant to be."[80]

A state court's decision is based on "an unreasonable determination of the facts" only if the state court's factual findings are "objectively unreasonable in light of the evidence presented in the state-court proceeding."[81] We must presume the state court's factual findings are correct.[82] The petitioner bears the burden of rebutting the presumption by clear and convincing evidence.[83]

We do not substitute our fact judgment or what we would do if we presided at the trial. We overrule Mr. Smith's counseled objections to Judge Hey's recommendation we deny habeas relief on all three grounds. We overrule Mr. Smith's objections to the admission of the photo array. Mr. Smith cannot sustain his claims for prosecutorial misconduct or ineffective assistance of counsel. We deny habeas relief on all grounds. We decline to hold an evidentiary hearing. We deny a certificate of appealability.

### A.     We overrule Mr. Smith's objections to the admission of the photo array.

Mr. Smith claims Judge Ransom should have suppressed Neighbor Gonzalez's photographic identifications of him as impermissibly suggestive. Judge Hey recommended denying habeas relief on this ground because the Superior Court's decision is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent nor based on an unreasonable determination of the facts. Mr. Smith objects to Judge Hey's recommendations. We agree with Judge Hey and overrule Mr. Smith's objection.[84]

Mr. Smith's claim about the suggestiveness of the photo array is grounded in due process. "A due process violation can result when an identification procedure is so suggestive that it undermines the reliability of the resulting identification."[85] We engage in a two-step inquiry to determine whether due process bars an out-of-court identification. "An identification procedure that is both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification violates due process."[86] "The suggestiveness of a photographic array depends on several factors, including the size of the array, its manner of presentation, and its contents. If there is no prejudice in the manner of presentation, the primary question is whether the suspect's picture is so different from the rest that it suggests culpability."[87]

"But unnecessary suggestiveness alone does not require the exclusion of evidence."[88] A suggestive identification procedure does not violate due process if it is nonetheless reliable. The Supreme Court in *Neil v. Biggers* directs us to consider the "totality of the circumstances" to determine if an identification is reliable even though suggestive.[89] We consider the following factors: "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and confrontation."[90]

Mr. Smith argues the photo array is unduly suggestive because Neighbor Gonzalez described the shooter to detectives as having a hairstyle akin to an afro and Mr. Smith is the only individual in the array with an afro haircut. Judge Ransom considered these arguments at a pre-trial suppression hearing and determined the array was not "unnecessarily suggestive or unduly prejudicial."[91] The Superior Court agreed, ruling "the fact that [Mr. Smith] had the longest hair of the selected individuals was not unduly suggestive."[92] Judge Hey found no error in the

Superior Court's decision. Mr. Smith objected to Judge Hey's recommendation, repeating the argument his hair "so stood out as to make the array improperly suggestive."[93]

We are guided by Judge Slomsky's reasoning in *Burton v. Glunt*.[94] The petitioner claimed the photo array was unduly suggestive because he was the only light-skinned black male in the photo lineup and the one wearing a white t-shirt. The petitioner argued he set forth "clear and convincing evidence" the lineup was suggestive. The petitioner attached a copy of the photo array and alleged he "and one other individual are the only two in the photo-lineup that resembles [sic] the varying descriptions giving [sic] by the witnesses."[95] Judge Slomsky reasoned the photo array and argument do not constitute "clear and convincing evidence" sufficient to rebut the state court's factual finding the display was not unduly suggestive.[96]

We are also guided by Judge Sitarski's reasoning in *Best v. Ecker*.[97] The victim of a home invasion gave the police general descriptions of her attackers, mentioning one of the attackers had a scar in his eyebrow.[98] The petitioner argued the trial court erred in denying his motion to suppress the photo identification because the identification violated his due process rights as it did not include more than one individual with a "sliced" or "interrupted" eyebrow.[99] The trial court reasoned, "Although there was a description by [the victim] as to an eyebrow scar, this does not demand that every photo in the array have identical eyebrow features."[100] Judge Sitarski found the state court's resolution of the claim was not an unreasonable application of law, reasoning, "Photographic arrays are not unnecessarily suggestive solely because certain characteristics of a defendant or photograph set him apart from others." [101] The trial court determined the petitioner's photograph did not stand out from the others even though he is the only one with a sliced eyebrow. Judge Sitarski presumed this finding of fact to be correct as the petitioner did not present clear and convincing evidence to the contrary.[102]

We find the Superior Court's decision is not an unreasonable determination of the facts. Contrary to Mr. Smith's suggestion, "Photographic arrays are not unnecessarily suggestive solely because certain characteristics of a defendant or photograph set him apart from others."[103]As Judge Hey explained: "The key question is whether differences in characteristics 'sufficiently distinguish' a defendant to suggest culpability."[104] Judge Ransom made the *factual* finding the array is not unduly suggestive and the effect of Mr. Smith's longer hair on the identification, if any, is minimal.[105] The Superior Court affirmed.  We presume Judge Ransom's findings of fact are correct unless rebutted by clear and convincing evidence.[106]  Mr. Smith presents no such evidence. We agree with Judge Hey, the Pennsylvania Superior Court, and Judge Ransom the differences in characteristics between the individuals in the photo array do not render Mr. Smith "sufficiently distinct" from the others in the array.

We further find the Superior Court's decision is not an unreasonable application of clearly established law. Judge Ransom weighed the fact Mr. Smith had longer hair with the *Biggers* factors, reasoning: (1) Neighbor Gonzalez was in the shared driveway behind the Hernandez' home at the time he saw Mr. Smith shoot Mr. Hernandez, (2) Neighbor Gonzalez moved closer to the source of the sound when he heard gunshots, (3) Neighbor Gonzalez gave a statement to police on the day of the incident, in which he described the shooter as dark-skinned, skinny, wearing jeans and a grey hoodie, and in his early twenties, which was consistent with the individual captured on the rear security cameras, (4) the time between Neighbor Gonzalez's identification and the time of the crime is only four days, and (5) Neighbor Gonzalez never wavered in his identification but rather circled Mr. Smith's picture without hesitation. Judge Ransom reasonably applied these facts in finding the identification reliable under *Biggers* and "any effect that [Mr. Smith's] longer hair had on the identification was minimal."[107]

We also note it is not clear Mr. Smith described the shooter's hair to police *before* viewing the photo array. Neighbor Gonzalez did not mention the shooter's hair in the original description he provided to police. Neighbor Gonzalez provided a description of the shooter's hair at some point, when he described an afro hair style, but it is unclear when he provided this description. This fact further bolsters the conclusion the photo array is not unduly suggestive.[108]

We adopt Judge Hey's recommendation we deny habeas on this photo array ground and overrule Mr. Smith's objections.

### B.      Mr. Smith cannot sustain his claims for prosecutorial misconduct.

Mr. Smith next claims the Assistant District Attorney engaged in prosecutorial misconduct by arguing a person depicted in a still photograph taken from surveillance camera footage bore a striking resemblance to Mr. Smith. Mr. Smith cannot sustain his claims for prosecutorial misconduct.

We may grant a habeas petition based on prosecutorial misconduct only when "the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process."[109] "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned."[110] "[T]he reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."[111]

The Assistant District Attorney showed a still frame from a surveillance video to the jury during closing arguments, commenting the person depicted in the picture "has a striking resemblance" to Mr. Smith.[112] Mr. Smith's attorney objected and moved for a mistrial based on the prosecutor improperly stating his opinion and making an argument unsupported by Detective Dunlap's testimony he could not use the image to make a positive identification. Judge Ransom

overruled the objection, reasoning potential prejudice caused by the statement was mitigated by her repeated instructions to the jury and the fact the jury had the opportunity to view the image and draw its own conclusions. The jury requested to see the video and still frames during deliberations. Judge Ransom allowed the jury to view this evidence over Mr. Smith's counsel's objections.

The Pennsylvania Superior Court rejected Mr. Smith's claim of prosecutorial misconduct on direct appeal. The Superior Court found Mr. Smith waived his claim because his counsel did not include a transcript of the closing arguments in the record. The Superior Court alternatively rejected the claim on the merits reasoning Mr. Smith did not show the prosecutor's comments so prejudiced the jury "they could not weigh the evidence objectively and render a fair verdict."[113] The Superior Court agreed Judge Ransom's instructions to the jury cured any potential prejudice.

The state standard is "materially indistinguishable from the federal one."[114] The "state standard – the 'unavoidable prejudice test' – is that prosecutorial misconduct will undermine a verdict when a prosecutor engages in conduct or uses language whose 'unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict.'"[115]

Judge Hey concluded the Superior Court's determination Mr. Smith suffered no prejudice is consistent with federal law and a reasonable determination of the facts. She reasoned claims of prejudice are undermined by: (1) significant evidence at trial identifying Mr. Smith as the perpetrator, including photo identification evidence, fingerprint evidence on the phone found in the decedent's car, and testimony from Mr. Smith's former cellmate Mr. Smith told him about his involvement in a homicide; (2) the jurors' opportunity to view the surveillance video for themselves and make their own determinations; and, (3) Judge Ransom's instructions to the jury.

Mr. Smith objects to Judge Hey's recommendation. We review Mr. Smith's claim on the merits as did the Pennsylvania Superior Court and Judge Hey despite questions raised as to procedural default.[116]

Mr. Smith challenges Judge Hey's reasoning "significant evidence" at trial identified Mr. Smith as the perpetrator, arguing the photo identification evidence is unduly suggestive and jailhouse informant testimony is inherently untrustworthy. We reject Mr. Smith's argument in its entirety. The photo array is not unduly suggestive. We likewise find the testimony of Mr. Smith's former cellmate to be reliable. While jailhouse informant testimony may be considered unreliable in certain circumstances, Mr. Smith offers no evidence—let alone clear and convincing evidence—to rebut Judge Ransom's *fact* finding Mr. Smith told a former cellmate he was incarcerated because he shot a "papi Dominican" and left his cell phone at the scene. Mr. Smith also ignores the significance of the fingerprint evidence on the cell phone found at the scene. The Commonwealth presented significant identification evidence against Mr. Smith at trial. The prosecutor's brief closing argument comments did not so taint the trial as to make the trial and Mr. Smith's conviction a denial of due process.

Mr. Smith further objects to Judge Hey's reasoning the prejudice caused by prosecutors offering opinions on the evidence is mitigated by the jury instructions and the jury's opportunity to view the evidence. We overrule Mr. Smith's objection. Judge Ransom instructed the jury statements by counsel are not evidence. "[J]urors can be relied upon to follow the trial judge's instructions."[117] Judge Ransom's jury instructions cured potential prejudice caused by the prosecutor's comments. We agree with Judge Hey the Superior Court's determination Mr. Smith suffered no prejudice is consistent with federal law and a reasonable determination of the facts.

We adopt Judge Hey's recommendation we deny habeas relief based on prosecutorial misconduct and overrule Mr. Smith's objections.

### C.   Mr. Smith cannot sustain his ineffective assistance of counsel claims.

Mr. Smith claims ineffective assistance of his trial counsel for failing to move for a mistrial after the Commonwealth advised it found Mr. Smith's fingerprint on the getaway vehicle. Judge Hey recommended we deny relief on Mr. Smith's ineffective assistance of trial counsel claim, which the Pennsylvania Superior Court addressed, and rejected, on Mr. Smith's Post-Conviction Relief Act appeal. Mr. Smith objects to Judge Hey's recommendation we deny habeas relief on his ineffective assistance of trial counsel claim. We studied the record and de novo reviewed the issues raised by Mr. Smith's objections. We agree with Judge Hey Mr. Smith cannot sustain his ineffective assistance of counsel claims.

We evaluate claims of ineffective assistance of counsel under the two-prong test of *Strickland v. Washington*.[118] Mr. Smith must show (1) his "counsel's representation fell below an objective standard of reasonableness"; and (2) "the deficient performance prejudiced the defense."[119]

The first prong requires Mr. Smith to show his trial counsel's alleged errors were "so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment."[120] "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."[121] The second prong requires Mr. Smith to show there is a reasonable probability but for his trial counsel's deficient performance, the result of the trial would have been different.[122]

Our review of ineffective assistance of counsel claims is "doubly deferential" under *Strickland* and section 2254(d), affording "both the state court and the defense attorney the benefit of the doubt."[123] We may, but are not required, to address the two-prong *Strickland* test "in the same order or even to address both components if the [petitioner] makes an insufficient showing on one."[124]

Assistant District Attorney Lipscomb originally believed police found Mr. Smith's fingerprint on the victim's red car. Expert Raytick testified at trial he found Mr. Smith's latent prints on another car - the Buick. Assistant District Attorney Lipscomb later learned police found Mr. Smith's fingerprint on the white getaway car rather than the victim's red car. Assistant District Attorney Lipscomb disclosed this new information shortly after learning it and asked Judge Ransom if he could present testimony regarding the accurate location of the fingerprint evidence. Mr. Smith's counsel objected arguing he intended to move for a mistrial if Judge Ransom allowed admission of the evidence. Judge Ransom did not allow Assistant District Attorney Lipscomb to present the evidence.

Mr. Smith asserts ineffectiveness of trial counsel for failing to move for a mistrial after the Commonwealth advised it found Mr. Smith's fingerprint on the getaway vehicle. Mr. Smith argued counsel's failure to move for a mistrial prejudiced him in his Post-Conviction Relief Act petition because it forced his counsel to improvise a defense strategy mid-trial and he could have struck a plea bargain with the Commonwealth if he knew about the fingerprint evidence.  Judge Anholt dismissed the Petition without a hearing. The Pennsylvania Superior Court affirmed the Post-Conviction Relief Act court's dismissal of this claim, finding counsel's decision not to move for a mistrial provided Mr. Smith a tactical advantage because the fingerprint evidence could be admitted on retrial. The Superior Court found Mr. Smith's claim about a pre-trial plea

bargain meritless because "the Commonwealth was similarly under a misimpression about the fingerprint evidence, bringing into question whether the Commonwealth would have extended the offer if it were in possession of accurate information about the evidence."[125]

Judge Hey recommended we deny Mr. Smith's ineffective assistance claim for failing to establish either prong of the *Strickland* analysis. She reasoned the Superior Court properly found trial counsel made the reasonable strategic decision to take advantage of the Commonwealth's "evidentiary misstep" by proceeding to try a case in which the Commonwealth was barred from presenting any evidence it found Mr. Smith's thumbprint in the getaway vehicle.[126] Judge Hey found the Superior Court's determination Mr. Smith did not suffer prejudice to be a reasonable determination of the facts because any claim Mr. Smith would have struck a pre-trial plea bargain is entirely speculative. We do not know how the fingerprint evidence linking Mr. Smith to the white getaway car would have impacted the Commonwealth's pre-trial offer and we "certainly cannot presume that such an offer would have been for the same or a lesser sentence."[127]

Mr. Smith objects to Judge Hey's recommendation arguing she does not account for the prejudice caused by defense counsel's opening statement, in which he told the jury the fingerprints were not on the white getaway car. According to Mr. Smith, "[a]ttentive jurors might wonder why counsel no longer pointed to such an important hole" in the evidence after the opening statements.[128] We cannot possibly find prejudice caused by defense counsel's opening statement outweighs the potential prejudice caused by a scenario in which defense counsel moved for a mistrial and Judge Ransom granted his motion. In this alternate scenario, Mr. Smith would face a new trial in which the prosecution *could* admit fingerprint evidence directly linking him to the getaway vehicle. "[T]actical choices made pursuant to an attorney's legal strategy are

'professionally reasonable judgments' that receive high deference from courts when evaluating the sufficiency of representation."[129] We are particularly deferential to counsel making tactical choices which clearly serve his client's interests.

Mr. Smith must do more than rehash his arguments for habeas relief; he must identify errors made by Judge Hey's Report and Recommendation.[130] We agree with Judge Hey's recommendation and deny habeas relief on this ground.

### D. We find no basis for an evidentiary hearing.

Our scope of review under section 2254 is limited. The factual record is developed. Congress through section 2254(e)(2) prevents us from holding an evidentiary hearing unless "[Mr. Smith] shows that—(A) the claim relies on—(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence" and "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."[131]

Mr. Smith does not address the requirements of section 2254(e)(2) or meet its stringent standards. We have no basis to hold an evidentiary hearing. Mr. Smith does not allege a claim in his habeas petition. We deny his request for a hearing.

### E. We find no basis for a certificate of appealability.

We find no basis for a certificate of appealability. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from ... the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."[132] We may issue a certificate of appealability if "the applicant has made

a substantial showing of the denial of a constitutional right."[133] Mr. Smith "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[134]

We decline to issue a certificate of appealability. Reasonable jurists could not disagree with our resolution of Mr. Smith's claims.

## III. Conclusion

We approve and adopt Judge Hey's detailed Report and Recommendation. We deny Mr. Smith's habeas petition with prejudice, deny an evidentiary hearing, and deny a certificate of appealability.

---

[1] We take these facts from Judge Ransom's trial court opinion. *Commw. v. Smith*, No. CP-51-CR-5466-2013 (Phila. Cnty. Ct. Com. Pl. June 12, 2015). Judge Platt adopted the trial court's summary of the facts on direct appeal. *Commw. v. Smith*, 153 A.3d 1107 (Pa. Super. Ct. 2016). Judge Hey adopted the same factual summary in her Report and Recommendation. ECF No. 31. We too adopt it and repeat it here as well as the facts summarized by the Pennsylvania Superior Court. We cite to the trial court opinion in the record at ECF No. 27 at 169–186 and the Superior Court opinion at ECF No. 27 at 189–198.

[2] ECF No. 27 at 171.

[3] ECF No. 29-7 at 5.

[4] ECF No. 27 at 171.

[5] *Id.*

[6] *Id.* at 171–72.

[7] *Id.* at 172.

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] ECF No. 29-5 at 12. Mr. Smith told Detective Singleton during his interview he was 5'10" and 175 pounds. ECF No. 29-6 at 34 (N.T. 7/11/14 at 132). Mr. Gonzalez did not mention the shooter's hair in the original description he provided to police. Mr. Gonzalez provided a description of the shooter's hair at some point, when he described an afro hair style, but it is unclear when he provided this description. *See* ECF No. 29-1 at 18 (Preliminary Hearing).

[12] ECF No. 29-1 at 19.

[13] ECF No. 27 at 174.

[14] *Id.*

[15] *Id.*; ECF No. 29-6 at 32.

[16] ECF No. 27 at 173.

[17] *Id.* at 174.

[18] *Id.*

[19] ECF No. 29-1 at 2.

[20] *Id.* at 10.

[21] *Id.* at 12.

[22] *Id.* at 18.

[23] ECF No. 29-3 at 7.

[24] ECF No. 27 at 176–77 (citing *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)).

[25] ECF No. 29-3 at 17.

[26] ECF No. 27 at 177.

[27] ECF No. 29-6 at 13.

[28] *Id.* at 12–13.

[29] *Id.* at 13.

[30] ECF No. 29-7 at 4.

[31] *Id.*

[32] *Id.*

[33] *Id.* at 7.

[34] ECF No. 29-5 at 18–19.

[35] *Id.* at 23.

[36] The opening and closing arguments were not transcribed.

[37] ECF No. 27 at 178.

[38] ECF No. 29-8 at 23.

[39] *Id.* at 23–24.

[40] *Id.* at 24.

[41] *Id.* at 27.

[42] *Id.*

[43] *Id.*

[44] ECF No. 29-9 at 2–3.

[45] *Id.* at 6.

[46] *Commonwealth v. Smith*, 153 A.3d 1107 (Pa. Super. Ct. 2016).

[47] ECF No. 27 at 192.

[48] *Id.* at 194.

[49] *Id.* at 194–95. The Superior Court made this determination without the benefit of viewing the photo array.  We agree with Judge Hey this omission does not undermine the reliability of the Superior Court's determination.  The Superior Court read the trial court transcripts of the suppression hearing which provided detailed descriptions of the photos in the array.

[50] ECF No. 27 at 196.

[51] *Commonwealth v. Smith*, CP-51-CR-0005466-2013 (Phila. Cnty. Ct. Com. Pl. Jan. 11, 2017).

[52] ECF No. 27 at 238.

[53] *Id.* at 239–244.

[54] *Id.*

[55] *Id.* at 302.

[56] *Id.* at 337–46.

[57] *Id.* at 345.

[58] *Id.* at 345–46.

[59] *Id.* at 345.

[60] *Id.* at 353.

[61] ECF No. 1.

[62] ECF No. 2.

[63] ECF No. 31 at 20.

[64] *Id.* at 21.

[65] *Id.* at 22–23.

[66] *Id.* at 23.

[67] *Id.* at 28–29.

[68] *Id.* at 33–34.

[69] *Id.* at 35.

[70] ECF No. 32.

[71] *Id.*

[72] 28 U.S.C. § 636(b)(1)(B).

[73] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting 28 U.S.C. § 2254(a)).

[74] 28 U.S.C. § 2254(b)(1)(A).

[75] *Id.* § 2254(d).

[76] *Lunsford v. Adm'r New Jersey State Prison*, No. 21-2134, 2024 WL 3356993, at *1 (3d Cir. July 10, 2024) (quoting *Abdul-Salaam v. Sec'y of Pa. Dep't of Corr.*, 895 F.3d 254, 265 (3d Cir. 2018)).

[77] *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

[78] *Lunsford*, 2024 WL 3356993, at *1.

[79] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[80] *Id.*

[81] *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (cleaned up).

[82] 28 U.S.C. § 2254(e)(1).

[83] *Eley*, 712 F.3d at 846 (cleaned up).

[84] We agree with Judge Hey this claim is not procedurally defaulted because the Superior Court addressed the merits on direct appeal in an alternative holding. *See Rolan v. Coleman*, 680 F.3d 311, 319 (3d Cir. 2012) ("The language of the statute does not draw a distinction between cases involving alternative rulings; it refers broadly to any claim that was adjudicated on the merits in State court proceedings.") (citation omitted).

[85] *United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003).

[86] *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006).

[87] *Reese v. Fulcomer*, 946 F.2d 247, 260 (3d Cir. 1991).

[88] *Brownlee*, 454 F.3d at 138–39.

[89] *Neil*, 409 U.S. at 198–99.

[90] *Brownlee*, 454 F.3d at 139 (citing *Neil*, 409 U.S. at 199).

[91] ECF No. 29-3 at 17.

[92] ECF No. 27 at 195.

[93] ECF No. 32 at 4.

[94] *Burton v. Glunt*, No. 07-1359, 2013 WL 6500621, at *1 (E.D. Pa. Dec. 11, 2013).

[95] *Id.* at *8.

[96] *Id.*

[97] *Best v. Ecker*, No. 15-2361, 2016 WL 8730900 (E.D. Pa. June 17, 2016), *report and recommendation adopted*, No. 15-2361, 2016 WL 8716272, at *1 (E.D. Pa. Aug. 12, 2016).

[98] *Id.* at *2.

[99] *Id.* at *14.

[100] *Id.* at *15.

[101] *Id.*

[102] *Id.* at *16.

[103] *Id.* at *15.

[104] ECF No. 31 at 20 (citing *Reese*, 946 F.2d at 260).

[105] *See Burton*, 2013 WL 6500621, at *8 ("Despite Petitioner's contentions, this averment with a copy of the photo array is not clear and convincing evidence sufficient to rebut the factual findings of the state court, which concluded that the display was not unduly suggestive."); *Clark v. Mazurkiewicz*, No. 12-213, 2013 WL 357472, at *11 (W.D. Pa. Jan. 3, 2013), *report and recommendation adopted*, No. 2:12-213, 2013 WL 357237 (W.D. Pa. Jan. 29, 2013) ("On habeas review, the state courts' factual findings with respect to the appearance of the photographs is presumed to be correct unless it is rebutted with clear and convincing evidence."); *Best*, 2016 WL 8730900, at *16 ("Here, the trial court reviewed the photo array itself and found no significant disparity existed between the photos in the array. Petitioner has failed to present clear and convincing evidence to the contrary.").

[106] 28 U.S.C. §2254(e)(1).

[107] ECF No. 27 at 177.

[108] *See Raheem v. Kelly*, 257 F.3d 122, 134 (2d Cir. 2001) ("A lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not.").

[109] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and quotations omitted).

110 *Id.* (citation and quotations omitted).

111 *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

112 The opening and closing arguments were not transcribed.

113 ECF No. 27 at 198.

114 *Reid v. Beard*, 420 F. App'x 156, 160 (3d Cir. 2011).

115 *Id.* at 160 n.9 (quoting *Commonwealth v. Johnson*, 533 A.2d 994, 997 (1987)).

116 *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); ECF No. 31 at 23 ("Because the District Attorney does not rely on the default in responding to this claim, the Superior Court addressed the merits of the claim, and the federal court can deny a claim notwithstanding the petitioner's failure to exhaust the claim, 28 U.S.C. § 2254 (b)(2), I will excuse the default and proceed to address the merits of the claim.").

117 *Samia v. United States*, 599 U.S. 635, 646 (2023).

118 466 U.S. 668 (1984).

119 *Garza v. Idaho*, 586 U.S. ---, 139 S. Ct. 738, 744 (2019) (quoting *Strickland*, 466 U.S. at 687–88).

120 *Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 391 (3d Cir. 2020) (quoting *Strickland*, 466 U.S. at 687).

121 *Id.* (quoting *Harrington*, 562 U.S. at 105).

122 *Strickland*, 466 U.S. at 694.

123 *Woods v. Donald*, 575 U.S. 312, 316–17 (2015) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).

124 *Strickland*, 466 U.S. at 697.

125 ECF No. 27 at 345.

126 ECF No. 31 at 34.

127 *Id.* at 35.

[128] ECF No. 32 at 10.

[129] *Mitchell v. Gilmore*, No. 19-5507, 2022 WL 20582686, at *7 (E.D. Pa. May 18, 2022), *report and recommendation adopted*, No. 19-5507, 2023 WL 5517214 (E.D. Pa. Aug. 25, 2023) (citation omitted).

[130] *Cairns v. McGinley*, No. 19-5351, 2023 WL 5432498 at *10 (E.D. Pa. Aug. 23, 2023) (collecting cases).

[131] 28 U.S.C. § 2254(e)(2); *Shinn v. Ramirez*, 596 U.S. 366, 388 (2022).

[132] 28 U.S.C. § 2253(c)(1)(A).

[133] *Id.* § 2253(c)(2).

[134] *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).